# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3426

_____

Gary Leirer

*Plaintiff - Appellant*

v.

The Proctor & Gamble Disability Benefit Plan; The Proctor & Gamble Company

*Defendant*s

The Procter & Gamble Disability Benefit Plan; The Procter & Gamble Long-Term
Disability Allowance Plan; The Procter & Gamble Optional Disability Insurance
Plan; Trustees of the Procter & Gamble Disability Benefit Plan; The Procter &
Gamble Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 26, 2018
Filed: December 6, 2018

_____

Before WOLLMAN, KELLY, and ERICKSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Gary Leirer worked for the Proctor & Gamble Company (with the Proctor & Gamble Disability Benefit Plan, collectively, the company) for many years. He became disabled as a result of a medical condition and began receiving total disability benefits. Following a medical examination, the company later determined that Leirer was partially disabled, and it terminated his benefits when his partial disability coverage ended. After the company upheld its determination, Leirer filed suit under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). He appeals the district court's[1] grant of summary judgment in favor of the company. We affirm.

## I. Background

Leirer underwent gallbladder removal surgery for gallbladder cancer in June 2012 and was subsequently approved for total disability benefits. The company's Disability Benefit Plan (Plan) defines total disability as

> a mental or physical condition resulting from an illness or injury which is generally considered totally disabling by the medical profession and for which the Participant is receiving regular recognized treatment by a qualified medical professional. Usually, Total Disability involves a condition of such severity as to require care in a hospital or restriction to the immediate confines of the home. The Trustees reserve the right to determine what is considered as "regular" and "recognized" treatment."

The Plan defines partial disability as

> a mental or physical condition resulting from an illness or injury because of which the Participant is receiving medical treatment and cannot perform regular duties of his or her current job but can perform other

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

-2-

roles at the same site or other jobs outside of the Company. Thus, a condition of Partial Disability does not necessarily prevent the Participant from performing useful tasks, utilizing public or private transportation, or taking part in social or business activities outside the home.

In April 2013, Leirer's treating physician, Michael Freeman, M.D., opined that Leirer could not handle light work and was totally disabled. That same month, the company requested that Leirer undergo an independent medical examination (IME) performed by Thomas Marsh, M.D. After interviewing Leirer and reviewing his records, Dr. Marsh concluded that Leirer was not totally disabled because he could drive, mow his grass with a riding mower, grocery shop, carry grocery bags, and lift a gallon of milk. Dr. Marsh determined instead that Leirer was partially disabled, as he was not functionally precluded from performing light duty or administrative tasks in the workplace.

On Dr. Marsh's recommendation, Leirer underwent a Functional Capacity Evaluation (FCE) in May 2013. The evaluation concluded that Leirer could not perform the required tasks for his line operator position but that he could perform medium-demand-level work on a full-time basis, subject to certain limitations. The company informed Leirer in September 2013 that his department did not have a position available to accommodate his work restrictions, rendering him eligible to receive partial disability payments. Leirer's partial disability payments began in July 2013 and ended 52 weeks thereafter.

Leirer appealed the company's partial disability determination through the Plan's administrative procedure. He submitted additional medical documentation, including further documentation from Dr. Freeman and a vocational rehabilitation evaluation conducted by a licensed psychologist. He also informed the company that he planned to undergo more tests at the Mayo Clinic. After the company received the additional medical documentation from the Mayo Clinic and Saint Francis Medical

Center, it requested an independent medical review by Sunil Sheth, M.D. Dr. Sheth reviewed Leirer's medical records on May 27 and determined that there was no objective medical evidence from July 2013 onward to substantiate Leirer's total disability claim.

In a letter dated June 17, 2014, the company informed Leirer that the objective medical evidence did not support his claim for total disability because "[t]here is evidence to substantiate that [he] has the ability to work in a medium demand level [position]." The company cited the IME and FCE in support of the denial.

Leirer filed suit in district court and later moved for summary judgment, arguing that the company had abused its discretion during the appeal process, which he asserted was procedurally defective. The company also moved for summary judgment. In granting the company's motion, the district court applied an abuse-of-discretion standard of review to the company's decision. The court determined that Leirer was not prejudiced by any procedural irregularities, that the company did not abuse its discretion, and that Leirer was not entitled to statutory penalties.

## II. Discussion

Leirer argues that the district court erred by applying abuse-of-discretion review to the company's benefits determination. We review *de novo* the district court's decision. Zaeske v. Liberty Life Assurance Co., 901 F.3d 944, 948 (8th Cir. 2018). Generally when an ERISA-qualified plan "grants the plan administrator the discretion to determine whether a claimant is eligible for benefits, review of the administrator's decision is for an abuse of discretion." McClelland v. Life Ins. Co. of N. Am., 679 F.3d 755, 759 (8th Cir. 2012). The Plan grants the company discretionary authority over the Plan's administration, which would be sufficient on its own to trigger abuse-of-discretion review. See Cooper v. Metro. Life Ins. Co., 862 F.3d 654, 660 (8th Cir. 2017).

-4-

In Woo v. Deluxe Corp., however, we stated that courts may apply a less deferential standard of review if there are procedural irregularities in the administrative process. 144 F.3d 1157, 1162 (8th Cir. 1998) ("[A]pplying the 'sliding scale' approach, the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity."). We have not yet had occasion to decide whether the Supreme Court's decision in Metropolitan Life Insurance v. Glenn, 554 U.S. 105, 108 (2008), abrogated the "procedural irregularity" component of the Woo sliding-scale approach. See Boyd v. ConAgra Foods, Inc., 879 F.3d 314, 320 (8th Cir. 2018). We need not decide that issue here, because Leirer has not shown that "a serious procedural irregularity existed, which . . . caused a serious breach of the plan administrator's fiduciary duty to [him]." Woo, 144 F.3d at 1160.

To establish a "serious breach," Leirer must show that a procedural irregularity "ha[d] 'some connection to the substantive decision reached.'" Id. at 1161 (quoting Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996)). Leirer contends that the company failed to provide him with the governing 2012 Plan document and instead provided him with plans from 2008 and 2013, along with a summary of the 2012 Plan. Although the parties dispute whether a 2012 Plan document exists, we conclude that in any case Leirer was not prejudiced by the absence of any such document. Every document provided to Leirer, including the 2012 summary, included the same material provisions regarding the definition of total disability and the company's discretionary authority to interpret and apply the Plan. Based on the documents provided to him, Leirer possessed the information necessary to litigate his claim and therefore was not prejudiced by any omission of Plan documents.

Leirer also argues that he was prejudiced when a nurse employed by the company provided Dr. Freeman with an incomplete definition of total disability.

Leirer did not raise this argument before the district court, however, and so we will not consider it now. See Cooper, 862 F.3d at 662.

Finally, Leirer alleges that the company's denial letter evidences the lack of a "full and fair review." "[A]n administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision." King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 1000 (8th Cir. 2005) (en banc). Leirer contends that the company's letter failed to sufficiently set forth the reasons for denial, as well as failing to identify a specific Plan provision in support of the company's decision. Although the letter lacked a certain amount of detail, we conclude that it was nevertheless adequate to apprise Leirer of the reasons underlying the company's decision. The letter cited the same definition of total disability contained in the Plan documents provided to Leirer. The letter then stated that after its review of all relevant information, the company had found no objective evidence of total disability, finding instead substantial evidence of partial disability based on the FCE and IME, including Leirer's ability to perform certain daily activities.

Because Leirer has not satisfied the test set forth in Woo, abuse-of-discretion review applies, and so we turn to the question whether the company abused its discretion in denying Leirer's claim for benefits. A company's decision to deny benefits "must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator." King, 414 F.3d at 1000. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 999 (quoting Donaho v. FMC Corp., 74 F.3d 894, 900 n.10 (8th Cir. 1996)). Leirer asserts that the company abused its discretion by denying him total disability benefits and that the district court should have remanded the case to the company claims administrator for further discovery.

As set forth above, the company's denial letter adequately stated the reasons supporting its decision. The company's interpretation of the plan was reasonable and the IME and FCE constituted substantial evidence in support of its decision. See Gerhardt v. Liberty Life Assurance Co., 736 F.3d 777, 781 (8th Cir. 2013) (concluding that the company did not abuse its discretion by relying on its own experts over the claimant's evidence). Leirer contends that the IME and FCE were "stale" by the time the company rendered its decision but he has not produced evidence refuting the conclusions of those reports. The company's denial letter highlighted Leirer's ability to perform certain daily activities, as found during the IME. That evidence, rather than growing stale, was confirmed by the vocational rehabilitation evaluation that Leirer himself provided, in which Leirer reported his ability to perform daily tasks such as doing laundry, straightening the house, and vacuuming. Given the Plan's definition of total disability, the IME and FCE provided substantial evidence of only partial rather than total disability.

Leirer's remaining arguments to the contrary are unavailing. Although the letter did not specifically address the medical evidence provided by Leirer, the record reflects that the company employed a physician to review all available documentation before issuing its decision. That the company did not cite Dr. Sheth's report in its letter is immaterial, because the report was "in the materials considered by the administrator." King, 414 F.3d at 1000; see also Gerhardt, 736 F.3d at 783 ("Gerhardt has not established that Liberty entirely ignored relevant evidence or that Liberty's decision to terminate its payment of long-term disability benefits was otherwise unreasonable."). Moreover, we agree with the district court that there was substantial evidence to support the company's decision apart from any consideration of Dr. Sheth's report.

Additionally, there is no evidence that the Plan administrators' conflict of interest—arising from their dual responsibilities of adjudicating Leirer's claim and paying his benefits—affected the disposition of Leirer's claim. The record reveals

that the company has instituted procedural safeguards to prevent that inherent conflict from affecting benefits determinations. See Boyd, 879 F.3d at 322 ("[A]s ConAgra introduced some testimony describing the procedural safeguards surrounding its administration of the Plan, this decreases the weight we afford the conflict-of-interest factor."). Because the company's decision was reasonable, it did not abuse its discretion by denying Leirer total disability benefits, and the district court did not err by declining to remand the case for further discovery.

Finally, Leirer asserts that he is entitled to statutory penalties under 29 U.S.C. § 1132(c)(1)(B) based on the company's failure to provide him with the 2012 Plan document. We review the district court's decision for abuse of discretion. See Brown v. Aventis Pharm., Inc., 341 F.3d 822, 825 (8th Cir. 2003). The district court did not make a factual finding about the document's existence, noting only that the document does not appear in the record. The court nevertheless declined to award penalties because it found that Leirer was not prejudiced by the document's omission. We agree that Leirer was not prejudiced, and we additionally conclude that Leirer has produced no evidence of bad faith on the company's part. See In re Interstate Bakeries Corp., 704 F.3d 528, 534 (8th Cir. 2013) ("In exercising its discretion to impose statutory damages, a court primarily should consider 'the prejudice to the plaintiff and the nature of the plan administrator's conduct.'" (quoting Starr v. Metro Sys., Inc., 461 F.3d 1036, 1040 (8th Cir. 2006))). There is nothing in the record that would contradict the company's affidavit that the summary document provided to Leirer was the only document in existence for 2012. Likewise, there is nothing in the record that would suggest that the company intentionally frustrated Leirer's attempts to discover any such allegedly absent document. The district court thus did not abuse its discretion by denying Leirer's request for statutory penalties.

The judgment is affirmed.

_____